**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FILED
NOV 18 2019
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

SHERRY MCROBIE,

Plaintiff,

v.

CIVIL ACTION NO.: 2:18CV90
(BAILEY)

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

# REPORT AND RECOMMENDATION

## I. Introduction

This case arises from the denial of Plaintiff, Sherry McRobie's ("Plaintiff") application for Disability Insurance Benefits ("DIB"), made pursuant to Title II of the Social Security Act. After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, Brian Rippel ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by Appeals Council was denied, making the ALJ's decision the final decision of Defendant. Plaintiff seeks judicial review of Defendant's decision.

The undersigned has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented. Accordingly, the undersigned has determined that the decisional process would not be significantly aided by oral argument. Therefore, the recommendations of the undersigned are set forth below.

## II. Factual/Procedural History

Plaintiff filed her DIB application on or about June 8 2015, and alleged a disability commencing on or about February 14, 2015. R. 154-157. Her claim was denied initially and upon reconsideration. R. 61-93. Thereafter, Plaintiff requested a hearing with an ALJ. R. 104-05. An Administrative Hearing was held on June 19, 2017. Plaintiff appeared in Petersburg, WV and the ALJ appeared in Charlottesville, VA. Tony Melanson, vocational expert, also appeared at the hearing. R. 15; R. 32-60. On November 13, 2017, the ALJ issued a decision that Plaintiff had not been under a disability within the meaning of the Social Security Act from February 14, 2015, through the date of the ALJ's decision. R. 15-26. On June 29, 2018, the Appeals Council concluded that there was no basis for granting Plaintiff's Request for Review. R. 1-5.

Plaintiff filed the instant Complaint on or about September 4, 2018. ECF No.1. Defendant filed its Answer on or about December 6, 2018. ECF No. 3. On the same date, Defendant filed a certified copy of the Social Security Administrative Record. ECF No. 4. On January 7, 2019, Plaintiff filed her Motion for Summary Judgment and Memorandum in Support. ECF Nos. 6 & 7. Defendant filed its Motion for Summary Judgment and Memorandum in Support on January 29, 2019. ECF Nos. 9 & 10.

According to her application for Social Security disability insurance benefits, Plaintiff claims that the following medical conditions render her disabled pursuant to the Social Security Act: major depression, anxiety, fibromyalgia, hypertension, thyroid disorder, GERD, stress, and memory loss. R. 170.

## III. ALJ Decision

### A. The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity. § 404.1520(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). § 404.1520(d). If impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. § 404.1520(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. § 404.1520(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

**B. ALJ Findings**

The ALJ's findings are set forth in his decision dated November 13, 2017, which provides as follows: Plaintiff meets or exceeds the insured status requirements of the Social Security Act through December 31, 2019; Plaintiff has not engaged in substantial gainful activity since February 14, 2015; Plaintiff suffers from the following, severe impairments: (1) arthropathies, (2) generalized anxiety disorder, (3) irritable bowel syndrome, (4) major depressive disorder, and (5) obesity.[1] R.17.

Additionally, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropers, or scaffolds; can have only occasional exposure to cold and heat extremes, vibration, and respiratory irritants. Further, Plaintiff can have no exposure to workplace hazards. She is limited to simple, routine tasks in entry level, unskilled work. Plaintiff requires a low stress job, cannot perform fast-paced production requirements, can have no interaction with the public, can have only occasional interaction with coworkers and supervisors. If the work requires a group setting, the group should be small. R. 18-20.

The ALJ concluded that Plaintiff is unable to perform any past relevant work. Nevertheless, considering Plaintiff's age, education, work experience, and residual functional

[1] Although the ALJ determined that Plaintiff suffers from hyperlipidemia, hypertension, and hypothyroidism, the ALJ nevertheless determined that these issues are medically monitored and managed through medication, and these diagnoses do not cause significant symptoms or limitations. Additionally, although the ALJ acknowledged Plaintiff's diagnoses of gastroesophageal reflux disease, hiatal hernia, hyperlipidemia, hypertension, and hypothyroidism, the ALJ found that there was no evidence in the record that would suggest these diagnoses have significantly limited Plaintiff's ability to perform basic work activities for a continuous period of at least twelve (12) months. R. 17-18. These issues are not a part of Plaintiff's appeal.

capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, including mailroom clerk, stock clerk, and hand packer. R. 25-26. The ALJ therefore concluded that Plaintiff was not under a disability from February 14, 2015 through the date of the decision within the meaning of the Social Security Act. R. 26.

## IV. Motions for Summary Judgment

### A. The Standards

#### 1. Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (internal citations and quotations omitted). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds* by *Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

With these understandings, we turn to the arguments raised on appeal.

**B. Arguments of the Parties**

**1. Plaintiff's Arguments**

Plaintiff first argues that the ALJ failed to set forth an appropriate narrative discussion describing how the evidence of record supported each conclusion and failed to cite specific medical facts and nonmedical evidence. Plaintiff contends that, while the ALJ did recite a summary of the medical evidence, he did not explain the genesis of the restrictions contained within the residual functional capacity assessment. ECF No. 7 at p. 6-7.

Plaintiff next argues that, while the ALJ determined that Plaintiff suffered from irritable bowel syndrome, which the ALJ considered a severe impairment, the ALJ nevertheless failed to include pertinent restrictions related to this impairment in his residual functional capacity assessment, and he failed to explain said omission. Specifically, Plaintiff argues that the ALJ failed to consider the frequency and duration of Plaintiff's need to use a restroom as a

consequence of her chronic diarrhea. Plaintiff cites Plaintiff's own testimony as evidence of this need. ECF No. 7 at p. 7-8.

Plaintiff next argues that the ALJ erroneously disregarded the opinions of Plaintiff's treating psychiatrist, Dr. William Scott Thomas. Plaintiff contends that the ALJ's opinion that Dr. Thomas's opinions are not consistent with his clinical examinations is erroneous. Additionally, Plaintiff argues that, in interpreting Dr. Thomas's reports, the ALJ has utilized an expertise in the field of psychiatry that the ALJ does not possess. ECF No. 7 at p. 9-10.

Finally, Plaintiff argues that the ALJ's credibility assessment of Plaintiff (that she is not credible) is not supported by substantial evidence, and specifically that the evidence of record does not support the ALJ's findings regarding the extent of Plaintiff's activities of daily living.

**2. Defendant's Arguments**

Defendant maintains that the ALJ sufficiently explained his finding that Plaintiff could perform a range of light work. Specifically, Defendant notes that the ALJ is not obligated to give a detailed "function-by-function analysis" in his decision. Rather, the ALJ may render a narrative discussion of the record, which the ALJ did in this case. ECF No. 10 at pgs. 9-10.

Defendant further argues that the ALJ did not fail to include restrictions related to Plaintiff's irritable bowel syndrome, but rather, specifically limited Plaintiff to less than light work. ECF No. 10 at p. 10.

Defendant also argues that the ALJ properly discounted Dr. Thomas's opinion because: (1) the issue of disability is reserved for the Commissioner; (2) Dr. Thomas's opinion was inconsistent with the medical record (including Dr. Thomas's own treatment notes); (3) Dr. Thomas's opinion was inconsistent with other evidence in the record; and because (4) Dr. Thomas's opinion was inconsistent with Plaintiff's reported activities. Finally, the ALJ

was not required to give controlling weight to Dr. Thomas's opinions which were expressed in the form of a "conclusory checkbox form[]". ECF No. 10 at p. 10-12.

In addition to the foregoing, Defendant contends that substantial evidence supports the ALJ's findings. In particular, Defendant notes that the ALJ considered all of the medical evidence, including the medical source opinions and Plaintiff's subjective complaints, and determined the same to not be fully consistent with the record. Because the ALJ carefully considered all pertinent material and conducted the appropriate analyses, and given the deferential standard of review, the ALJ's findings should not be disturbed. ECF No. 10 at pgs. 13-15.

**C. Discussion**

**1. ALJ's Findings re: Functional Assessment**

**a. The ALJ performed an appropriate functional assessment of Plaintiff.**

Plaintiff first argues that the ALJ's assessment of Plaintiff's residual functional capacity failed to set forth an appropriate narrative discussion describing how the evidence of record supported each conclusion and failed to cite specific medical facts and nonmedical evidence. Plaintiff contends that the ALJ is required to perform a function-by-function assessment of Plaintiff's ability to perform the physical and mental demands of work but failed to do so. Plaintiff relies upon SSR 96-8, *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and *Monroe v. Colvin,* 826 F.3d 176 (4th Cir. 2016) to support this argument. For the reasons set forth below, this argument is without merit.

Social Security Ruling 96-8p "instructs that the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the

regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal citations and quotations omitted). "When performing RFC assessment, an ALJ must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the claimant's physical abilities, mental abilities, and "other work-related abilities." *Williams v. Comm'r of Soc. Sec.*, No. 3:14CV24, 2015 WL 2354563, at *4 (N.D. W. Va. May 15, 2015) (internal citations and quotations omitted). "Only after that may the residual functional capacity be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

In *Mascio*, the Fourth Circuit rejected a *per se* remand rule where an ALJ does not perform an explicit function-by-function analysis. *Mascio,* 780 F.3d at 637. The Fourth Circuit nevertheless acknowledged that "remand may be appropriate…where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* In *Mascio*, remand was necessary because the Court was forced to guess at how the ALJ arrived at his conclusions. Importantly, a review of that opinion reveals that the ALJ decision at issue appears to have been incomplete because it left out entirely the weight given to certain evidence and the rationale of his assessment.[2] *Id.* That is not the case here.

A review of the ALJ's decision in the instant matter reveals that the ALJ included a narrative discussion of over five (5) single-spaced pages in support of his RFC findings. Said narrative discussion includes a summary and citation to the medical and nonmedical evidence of record, Plaintiff's subjective complaints, the findings of State Agency Consultants Frank Roman, Ed.D., Ann Logan, Ph.D., Atiya M. Lateef, M.D. and Uma Reddy, M.D, and Plaintiff's expert,

[2] The incompleteness of the ALJ's opinion appears to have been inadvertent.

Dr. William Scott Thomas.[3] The ALJ summarized the medical and nonmedical evidence, including Plaintiff's subjective complaints, and provided a thorough explanation of the weight he assigned to the evidence and why. The ALJ also described in detail the findings of the aforementioned experts and provided a thorough explanation of the weight he assigned to each expert's opinion and why. While it is true that the ALJ did not explicitly identify any analysis as a "function-by-function analysis;" this is of no moment. The same is impliedly contained within the ALJ's detailed and extensive discussion of the evidence of record. R. 15-26.

**b. Substantial evidence exists for the ALJ's assessment of Plaintiff's complaints vis-à-vis her irritable bowel syndrome.**

Plaintiff also argues that the ALJ failed to include pertinent restrictions related to Plaintiff's irritable bowel syndrome. Specifically, Plaintiff contends that the ALJ failed to provide consideration for frequency and duration of Plaintiff's need to use the bathroom during the workday. This argument is similarly without merit.

In support of this argument, Plaintiff relies upon her testimony that she experienced diarrhea four to five times per day. However, the ALJ found that Plaintiff's complaints about the severity and persistence of her irritable bowel syndrome were not borne out by the medical evidence of record. To the contrary, and according to the ALJ, the treatment records indicate that diagnostic testing revealed essentially normal results and that Plaintiff's complaints were managed with conservative treatment. As is set forth below, a review of the pertinent records confirms the ALJ's observations and conclusions.

Plaintiff's records from her treatment with Dr. Thomas reveal that she attended office visits approximately thirty-six (36) times between 2/18/2013 and 5/16/2017. R. 292-341, 362-378, 472-498. Plaintiff's visit of 8/24/2015 is the first time in the records that she appears to

[3] It appears that the ALJ inverted Dr. Thomas's middle and last names. This is of no moment for the instant opinion.

complain of diarrhea. R. 362-63. At the time of her 8/24/2015 visit, she complained of experiencing diarrhea four (4) to five (5) times per day every day for the previous four (4) months. Again, and notwithstanding the timeline described by Plaintiff, this is the first time such a complaint is noted in the medical records. She also noted that she had used Bentyl in the past and wondered if it would help. Dr. Thomas prescribed Bentyl and Lomotil and referred Plaintiff to Dr. Suratkal Shenoy. R. 362-63.

On 9/3/2015, Plaintiff presented to Dr. Shenoy with complaints of diarrhea four (4) to five (5) times per day for the previous six (6) months. Plaintiff's physical examination was essentially within normal limits. Dr. Shenoy recommended that Plaintiff undergo an EGD (esophagogastroduodenoscopy) and colonoscopy. R. 379-380.

Plaintiff underwent an EGD on 10/6/2015 at Potomac Valley Hospital with Dr. Shenoy. R. 391-92 (history and physical exam); and R. 399-400 (operative note). The exam revealed normal EGD with no ulcer, hernia, gastritis or bleeding noted. Plaintiff underwent a colonoscopy with sigmoid biopsy and rectal biopsy on 10/7/2015 with Dr. Shenoy. No colitis or Crohn's disease was noted. R. 423-24 (operative report). After these two procedures, Dr. Shenoy recommended the following medications for Plaintiff: Fibercon tablets; Librax; Lactobacillus tablets; to discontinue Prilosec and start Zantac. She was to follow up with the office in approximately 4 weeks. No follow up note is seen in the record. R. 424.

Given the aforementioned evidence, substantial evidence exists for the ALJ's decision to discount Plaintiff's testimony regarding her diarrhea. Notwithstanding, the undersigned would note that the ALJ did include considerations for irritable bowel symptoms such as cramping and pain within the RFC, i.e. that Plaintiff is limited to less than light work.

**2. Dr. William Scott Thomas**

**a. The ALJ's conclusions about Dr. Thomas's disability opinion are supported by the evidence in the record, including Dr. Thomas's own treatment records.**

Plaintiff next argues that the ALJ erroneously disregarded the opinions of Plaintiff's treating psychiatrist, Dr. William Scott Thomas. This argument is not persuasive because the ALJ's concerns appear to be well-founded. A review of Dr. Thomas's medical records reveals that Dr. Thomas's objective examinations, course of treatment, and his overall medical opinions concerning the severity of Plaintiff's symptoms do not comport with the opinions expressed in the Mental Impairment Questionnaire. R. 292-341, 362-378, 472-498 (medical records); but see R. 467-471 (Mental Impairment Questionnaire filled out by Dr. Thomas).

For example, at almost each of Plaintiff's psychological follow-up visits with Dr. Thomas, Dr. Thomas noted that Plaintiff demonstrated **appropriate dress, that she was alert and oriented to person, place, time and situation; she had at least fair eye contact; she was not suicidal, homicidal, or paranoid; she was not experiencing auditory, visual, olfactory, or tactile hallucinations; that Plaintiff's thought process was linear and goal directed, and that her immediate, recent and remote memory was intact; her insight was fair and her judgment was fair**. R. 293, 297, 299, 301, 303, 305, 312, 317, 325, 476, 478, 483, 485, 487, 489, 491, 493, 495, 497. (Emphasis added.) Dr. Thomas noted that Plaintiff said she was "sleeping ok." R. 493. Overall, Dr. Thomas appears to have pursued a conservative course of treatment for Plaintiff, and Dr. Thomas did not document any significant mental status findings. There is also no suggestion in Dr. Thomas's treatment records that he believes Plaintiff's mental impairments gave rise to the limitations contained in Dr. Thomas's disability opinion. *See* records cited above. And yet, on the Mental Impairment Questionnaire, Dr. Thomas opined,

among other things, that Plaintiff demonstrated poor memory, difficulty thinking or concentrating, suicidal ideation, and sleep disturbance.

Moreover, Dr. Thomas's opinions are inconsistent with other evidence in the record, including Plaintiff's reported activities and the reports of the state agency experts. R. 23. Given these contradictions, substantial evidence exists in the record for the ALJ's finding that Dr. Thomas's opinions are not entirely credible.

**b. The ALJ's findings do not constitute an improper exercise of expertise in psychiatry.**

Plaintiff further contends that, in rejecting Dr. Thomas's opinion, the ALJ exercised "an expertise he did not possess in the field of psychiatry, and substituted his own judgment over a competent medical opinion." ECF No. 7, at pg. 10. The undersigned would disagree. The instant matter is distinguishable from the cases upon which Plaintiff relies, i.e. *Brown v. Commissioner*, 873 F.3d 251, 271 (4th Cir. 2017) and *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984).

For example, in *Brown*, the ALJ clearly made his own evaluation of Plaintiff's physical condition based upon the ALJ's observations of said plaintiff during the administrative hearing. He then relied upon these observations when determining whether and to what extent that plaintiff was disabled within the meaning of the Social Security Act. In so doing, he rejected observations made by one of the experts in the case. *Brown*, 873 F.3d at 271. Similarly in *Wilson*, the ALJ used the expert's own (Dr. Marshall's) clinical findings to dispute the expert's opinions regarding that plaintiff's physical capacity and then used the expert's clinical findings to formulate his own opinion. *Wilson,* 743 F.2d at 221. That is not what occurred in this case. Rather, the ALJ pointed out distinct contradictions between the physical examination results, treatment methods, and diagnoses captured in Dr. Thomas's treatment records, with those

opinions contained in Dr. Thomas's disability opinion. Once the ALJ made his credibility determination with respect to Dr. Thomas's disability opinion, he relied upon other medical and nonmedical evidence in the record to make his findings. Drawing conclusions from the credible medical evidence demonstrates that the ALJ is serving his function, which is to determine whether and to what extent Plaintiff is disabled pursuant to the Social Security Act.[4] *See* 20 C.F.R. § 404.1527(d)(3) ("final responsibility for deciding the issue of disability is reserved to the Commissioner"). Substantial evidence therefore supports the ALJ's credibility determination of Dr. Thomas.

**3. Evaluation of Plaintiff's Subjective Complaints and Credibility**

Finally, Plaintiff argues that the ALJ erroneously determined that Plaintiff was not credible. Plaintiff claims that this finding is not supported by substantial evidence. For the following reasons, the Plaintiff's argument is not persuasive. To the contrary, substantial evidence supports the ALJ's conclusions with respect to Plaintiff's complaints.

**a. The ALJ explained how he decided Plaintiff's credibility.**

Plaintiff first contends that the ALJ failed to explain how he decided which of Plaintiff's statements to believe and which to discredit. This is not accurate. On pages 20-25 of the ALJ's report, the ALJ details the statements which the ALJ found to be incredible and the reasons why. In particular, at pages 20-21, the ALJ summarized Plaintiff's complaints with respect to her

[4] In furtherance of this argument, Plaintiff also points out that Dr. Thomas's findings regarding Plaintiff's physical appearance, her memory, and whether she had suicidal and homicidal ideations, were remarkably similar to those observations made by the emergency room physicians at Western Maryland Regional Health Center when Plaintiff was admitted for treatment of Depressive Disorder. It seems that Plaintiff is trying to illustrate that Western Maryland Regional Health Center's findings regarding Plaintiff's physical and mental presentation during a major depressive episode were remarkably similar to Dr. Thomas's findings. It further seems that Plaintiff is using this similarity to bolster the credibility of Dr. Thomas's findings and to cast doubt upon the ALJ's decision. The undersigned is not persuaded, however. The observations to which Plaintiff refers from Western Maryland Regional Health Center are the observations made of Plaintiff when she was stable at discharge, and not at the time of admission for treatment of Depressive Disorder as Plaintiff contends. Therefore, this argument seems to bolster the ALJ's finding with respect to Dr. Thomas's opinions.

fibromyalgia and her mental health issues. However, the ALJ found that the limiting effects of these symptoms not entirely consistent with the medical evidence in the record. At pages 21-22 of the ALJ's opinion, the ALJ again found that Plaintiff's complaints vis-à-vis the limiting effects of her irritable bowel syndrome were not borne out by the other evidence in the record.

**b. The ALJ's failure to consider the extent to which Plaintiff could perform activities of daily living was harmless and substantial evidence exists in the record to support the ALJ's credibility finding.**

Plaintiff next contends that the ALJ considered the activities that Plaintiff could perform without also considering the extent to which she could perform them, and whether she had other limitations which impacted her ability to perform those activities. In particular, Plaintiff takes issue with the following paragraph of the ALJ's opinion, which can be found at R. 23:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She completed a function report with Patricia Burdock dated June 2015, wherein she admitted to being able to put dishes in the dishwasher, do light dusting, drive, shop for groceries, count change, use a checkbook/money order, watch television, and crochet….At the hearing, the claimant testified that she can perform simple household chores, including dusting, vacuuming, sweeping the kitchen, cooking with the microwave, sometimes do crafts, and watch television. These activities reveal a significantly greater physical and mental functional capacity than alleged.

Plaintiff argues that these findings ignore Plaintiff's testimony that her daughter or her husband do the grocery shopping, that she can vacuum a room, dust and sweep the kitchen once in a while, that she no longer cooks or drives, and that she has difficulty reading due to concentration and focus problems. Plaintiff further contends that the ALJ ignored evidence which indicates that she sometimes stays in bed all day, that she sometimes sleeps for days, that she wears the same clothes for two to three days, that she bathes one to two times a week, and does not care for her hair. There is also evidence that Plaintiff requires reminders to take medicine and take care of her personal hygiene, she forgets about bills that need to be paid and she does no yard work.

Plaintiff relies upon *Woods v. Berryhill*, 888 F.3d 686, (4th Cir. 2018) in support of this argument. In particular, Plaintiff highlights the following language from *Woods*: "An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." *Woods*, 888 F.3d at 694.

Plaintiff's argument is well taken, and the undersigned would conclude that, in this part of the ALJ's credibility analysis, the ALJ apparently failed to consider Plaintiff's claims regarding the extent to which Plaintiff could perform the activities listed in the ALJ's report. However, as explained above, evidence in the record demonstrates that Plaintiff's subjective complaints are not entirely credible. Indeed, a review of the credible evidence of record shows that Plaintiff's subjective complaints regarding the disabling nature of her ailments are not supported by the clinical observations of medical personnel or the findings on objective medical examination, including those of her own expert, Dr. Thomas. Therefore, the undersigned would conclude that the ALJ's apparent failure to consider Plaintiff's assertions vis-à-vis the extent to which she could perform certain activities is harmless because, even if he had considered these assertions, they would likely not have changed the ALJ's ultimate decision. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

## V. Recommendation

Accordingly, and for all of the foregoing reasons, the undersigned would conclude that substantial evidence exists in the record to support the ALJ's findings. The undersigned therefore **RECOMMENDS** that that Plaintiff's Motion [6] for Summary Judgment be **DENIED** and Defendant's Motion [9] for Summary Judgment be **GRANTED**.

**Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.**

**A copy of such objections should be submitted to the District Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).**

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 18th day of November 2019.

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE